UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

KENT THOMAS,

        Defendant.

Case No. 18-cr-47-pp

---

**ORDER GRANTING REQUEST TO REVIEW DETENTION ORDER, AND DENYING MOTION FOR RELEASE PENDING TRIAL (DKT. NO. 30)**

---

The defendant appeared before Judge Joseph for arraignment and plea on June 12, 2018. Dkt. No. 2. Judge Joseph ordered him detained pending trial. Dkt. No. 4. On June 29, 2018, the defendant filed a motion asking Judge Joseph to revisit her order of detention. Dkt. No. 13. The court held a hearing, but declined to order the defendant released. Dkt. No. 19. The defendant now has asked this court to consider releasing him. Dkt. No. 30. Based on all the information in the record, the court considers that request, but denies it.

**I.    FACTS**

The grand jury charged the defendant with one count of being a felon in possession of a firearm. Dkt. No. 1. The indictment indicates that the offense occurred on November 6, 2017. Id. at 1.

At the arraignment and plea hearing before Judge Joseph, the government explained that recently, the defendant had been identified as a participant in a robbery that occurred on November 3, 2017. Dkt. No. 1 at 2.

1

The car used in that robbery also was used in a November 5, 2017 carjacking that involved the discharge of a gun, which caused injury. On November 6, 2017, the police department found the carjacked vehicle; the defendant was using it, was in possession of a firearm with an extended clip, and the gun was a ballistics match with the gun used in the carjacking. Id. The defendant was in the back of the car on November 6, with two guns; the police saw him handle the one with the extended magazine. Id.

In the defendant's motion for review of Judge Joseph's detention order, the defendant explained that he did not contest the fact that he'd been present at the November 3, 2017 robbery, but told the court that his role was to hold the door open; he'd never entered the victim business. Dkt. No. 13 at 3. He did not contest the fact that the gun used in the November 5, 2017 carjacking was the same gun that he was arrested with on November 6, 2017, but he asserted that he was not the carjacker. Id.

The government responded that on November 3, 2017, the defendant and another person had driven up to Horizon Real Estate in a black Lincoln MKZ. Dkt. No. 17 at 1. They got out of the car, and the defendant opened the front door as the other man—armed—went in and robbed an employee. The two men then got back into the Lincoln and fled. Id. On November 5, 2017, the defendant—driving the same black Lincoln from the November 3 robbery— dropped off an armed man near a person who'd just parked his/her car in an alley behind a residence. Id. at 2. The armed suspect approached the person who'd parked the car, and demanded his/her keys, then fired the gun into the

ground; the victim was struck in the face by the ricochet (not severely injured). Id. The armed man got into the victim's car, and he and the defendant (in the Lincoln) drove away. Id.

On November 6, 2017, the police located the car stolen from the carjacking victim; they saw the defendant get into the back seat behind the driver, while holding a handgun with an extended magazine. Id. The gun looked similar to the one the victim of the previous day's carjacking had described. Id. Three other people got into the car. The police tried to stop the car—four people got out and ran, and the police arrested them. They recovered the gun "from an area close" to where the defendant was sitting. Id. The gun was a Taurus, 9mm, semiautomatic pistol with an extended magazine that would hold thirty-two rounds of ammunition. Id. On November 7, 2017, the police forensic department verified that the casing from the Taurus matched the casing police had recovered from the November 5 carjacking scene. Id.

## II. ANALYSIS

This court reviews the question of whether to release the defendant *de novo*. 18 U.S.C. §3145(a); United States v. Hammond, 204 F. Supp.2d 1157, 1162 (E.D. Wis. 2002) (citations omitted). Because the record contains substantial information on the factors the court must consider, the court has not scheduled a hearing (Judge Joseph has held two), and bases its decision on the record.

Section 3142(g) of Title 18 lists the factors a court must consider in deciding whether there is any combination of conditions that will "reasonably

3

assure the appearance of the person as required and the safety of any other person and the community." Judge Joseph expressed the view that the defendant did not pose a flight risk, dkt. no. 2 at 2; dkt. no. 19 at 1, but she ordered the defendant detained because she found that he posed a danger to others or the community. This court agrees with Judge Joseph's conclusion.

    A.    *The nature and circumstances of the offense (§3142(g)(1))*

Section 3142(g)(1) requires the court to consider the offense itself, including whether it was a crime of violence, whether it involved a controlled substance, and whether it involved a firearm. The grand jury charged the defendant with one count of being a felon in possession of a firearm. Dkt. No. 1. Being a felon in possession of a firearm is often referred to as a "status" offense; the statute does not require the factfinder to determine that the person possessing the gun did anything with it. It is illegal for a felon to possess a gun, even if he does nothing more with it than keep it in a box in a closet.

The court must look further than the actual charges, however, in making a bond determination. In this case, this defendant is not accused of having a gun in a closet. There appears to be no dispute that in a three-day period, the defendant was a participant in the armed robbery of a real estate company and an armed carjacking. He argues that he was not the gunman in either the robbery or the carjacking, and he may be right. But the facts to date indicate that the defendant knowingly assisted another person in committing two armed, violent offenses. The day after the carjacking, the officers found the

defendant in the car that had been stolen, with the gun that was used to steal it.

Viewing all of this with an eye toward danger to the community, the majority of facts weigh in favor of a finding of dangerousness. The only fact that weighs against a finding of dangerousness is the fact that the defendant was not the person who had the gun in the real estate office, and was not the person who pointed or fired the gun at the carjacking victim.

On balance, the court concludes that the nature and circumstances of the offense show that the defendant poses a danger to the community.

  B.  *The weight of the evidence against the person (§3142(g)(2))*

The evidence is strong. The defendant does not contest that he held the door open for the real estate office robber. He does not contest that the gun he had on November 6, 2017 was the gun used in the carjacking the day before, and the ballistics test proves that fact. The officers found the defendant with the gun on November 6, 2017. All of these factors weigh in favor of a finding of dangerousness.

  C.  *The history and characteristics of the person (§3142(g)(3))*

    1.  The defendant's character

The court does not have much direct evidence regarding the defendant's character. There is circumstantial evidence in the defendant's work and criminal history, which the court discusses below.

2. The defendant's physical and mental condition

At the first detention hearing on June 12, 2018, pretrial services reported to Judge Joseph that the defendant had some minor medical problems. He had been diagnosed with bipolar disorder in 2017, while in custody at Fox Lake Correctional Institution; he had a prescription, but was not taking it at that time. Dkt. No. 2 at 2.

The June 25, 2018 bond study prepared by pretrial services further explained that the defendant's minor medical problems included high blood pressure, asthma and back pain; he took medication for the blood pressure and asthma. Dkt. No. 18 at 2. The only detail the report added regarding the defendant's mental health was the name of the medication he had been prescribed, and his view that he was not experiencing any active symptoms of mental illness at the time of the interview. Dkt. No. 18 at 2.

3. Family ties

At the June 12 detention hearing, pretrial services reported that the defendant (who is twenty-five) had spent his entire life in Milwaukee, and that he had family in the area. Dkt. No. 2 at 1. Prior to his arrest, he'd been living with his long-term girlfriend and children. Id. His girlfriend was willing to have him return to living with her if released. Id. The June 25, 2018 bond study added that the defendant had five siblings who lived in the Milwaukee area, as well as his parents; he had frequent contact with all of them. Dkt. No. 18 at 1. The defendant has three children, ranging in age from six to four months, and was in contact with them daily. Id.

4. Employment

At the June 12, 2018 detention hearing, pretrial services reported that the defendant had not been employed since his arrest in January; before that, he had worked through a temporary service. Dkt. No. 2 at 1. The June 25 bond study revealed that between October 2015 and April 2016, the defendant had had two jobs—three months at a place called Jersey Mike's, and two and a half months at Valvoline. Dkt. No. 18 at 2. He had worked two weeks in the spring of 2017 at Staffworks, the temp agency. The report indicated, however, that the defendant had been unemployed since May 2017. Id.

5. Financial resources

The defendant has no assets, liabilities, income or expenses. Dkt. No. 18 at 2.

6. Length of residence in the community

The defendant has lived in Milwaukee for twenty-five years.

7. Community ties

The defendant has not presented any evidence of community ties (such as church involvement, involvement with community organizations, etc.).

8. Past conduct

The defendant originally was prosecuted in state court for this offense; the state court released him on a $1,500 cash bond. He did not flee, and appeared in court when required. Dkt. No. 30 at 2.

9. History relating to drug or alcohol abuse

At the June 12, 2018 detention hearing, pretrial services reported that the defendant drank socially, and as of six months prior to the hearing, had been using marijuana daily. Dkt. No. 2 at 2. He had produced a urine sample on the day of the hearing, which was negative for controlled substances. Id. The June 25, 2018 bond study reported the same information. Dkt. No. 18 at 3.

10. Criminal history

The June 25, 2018 bond study shows a criminal history dating back to 2009, when the defendant was sixteen. Dkt. No. 18 at 3. Leaving aside three charges issued when the defendant was sixteen, the defendant's first felony conviction was in April 2010 when he was seventeen; he was convicted of possession with intent to possess more than 200 grams of marijuana, possession with intent to deliver GHB, and loitering. Id. He received a stayed sentence of eighteen months of confinement and three years of probation; the probation was revoked three months shy of completing probation. Id. A month after the first charge, he was charged with misdemeanor possession with intent to distribute marijuana and loitering. Id. at 4. In September 2010—while the April 2010 drug charges were pending—he was charged with robbery with threat of force. The charge was amended to theft of movable property from a person, party to a crime; he received the same sentence as the one he received for the April drug charge, to run concurrently. Id. There were a couple of other minor charges in late 2010 and early 2011, but in August 2011 (at age 18), the

defendant picked up charges for probation violation, burglary, and operating after suspension/revocation. Id. The burglary charge was dismissed, and there are no records of the disposition for the driving charges.

In February 2013, when he was nineteen, the defendant was charged with armed robbery. Id. at 4-5. The charge was reduced to theft of movable property, and the defendant was sentenced to 305 days in the House of Correction. Id. at 5. Three years later, at age 23, the defendant was charged with "prohibited possession of a firearm," felony possession of marijuana, receipt of stolen property, operating a vehicle without the owner's consent (passenger), and resisting/obstructing. Id. All counts were dismissed except the marijuana charge, for which he received a sentence of five months in the House of Correction. Id.

At age twenty-four, the defendant picked up three different cases, he was charged with possession of guns, possession of drugs, operating vehicles without the owners' consent, resisting, and bail jumping. All the charges were dismissed—in at least two cases, the state moved to dismiss the charges. Id.

11. Record concerning appearance at court proceedings

The defendant has several arrests for bail jumping. The record does not indicate whether these charges were the result of failures to appear in court, or violations of probation conditions. All were dismissed. The defendant argues that he appeared in state court as required when the state charges the facts of this case are based on were pending.

9

12. Whether the defendant was on bond at the time of this offense

It does not appear that the defendant was on any kind of supervision at the time of his arrest.

D. *The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release (§3142(g)(4))*

This final factor requires the court to look at all the previous ones, and try to determine whether any of them indicate that the defendant is likely to pose a risk of flight or a danger to anyone in the future, and if so, to identify that danger.

The court agrees with Judge Joseph that the defendant does not appear to pose a serious risk of flight. He has lived in Milwaukee his entire life. His family—parents, siblings, girlfriend and children—are here. He does not have the financial means to go anywhere, and doesn't have a passport.

That leaves the question of whether the defendant poses a danger to the community. The court concludes that he does. The court already has explained that the charges in this case are serious. This is not a plain vanilla felon-in-possession situation, where the defendant did nothing more than possess a gun. The defendant was a key participant in two violent, armed crimes, and on the day of his arrest, he had in his hands the gun used in the carjacking the day before. This shows that the defendant was willing to assist others in committing crimes that could have resulted in serious injury or death.

While the defendant does not have many convictions, he has a concerning number of arrests over the seven or eight years of his adult life.

Several of those arrests involved allegations that he possessed guns—exactly what he did in this case. The court recognizes that those charges were dismissed. It also recognizes, as the Seventh Circuit has held, that the simple fact that a defendant has been a danger in the past is not enough to find that he is dangerous now. See United States v. Dominguez, 783 F.2d 702, 706-707 (7th Cir. 1986) (citations omitted). But if that past history "suggests the likelihood of future misconduct," it is relevant to a finding of dangerousness. Id. The record contains troubling evidence that the defendant cannot, or will not, stay away from guns, even though it is not legal for him to have them. And in this case, he had a gun in connection with violent crimes.

The defendant admits to daily marijuana use prior to his arrest. The court understands that in today's world, many do not consider marijuana use to be "serious," and in many places it is as legal to use marijuana as it is to use alcohol. The fact that the defendant was consistently using a substance which can affect one's judgment and reasoning, however, makes his involvement in dangerous activity more questionable.

For the six months prior to his arrest, the defendant had not been working. While he argues in his motion that his long-term girlfriend has a job as a manager at a local business, dkt. no. 30 at 2, the defendant has presented no evidence that he would have a job to go to if released. Usually employment history goes to the issue of whether a defendant poses a risk of flight, but the court finds it relevant to danger to the community under these circumstances. The defendant would have nothing to occupy him (other than, presumably,

helping to care for his children) on release. He didn't have anything to occupy him before he was arrested, and he filled that vacuum during one week in November of last year with very dangerous activities.

The defendant argues that he will have a stable residence if released; he can live with his long-time girlfriend and their children. Id. At the June 12 detention hearing, pretrial services reported that that was where the defendant had been living prior to his arrest, dkt. no. 2 at 1; it did not stop him from being involved in these crimes. The June 25 bond study says that the defendant reported residing on North 16th Street at the time of his arrest, and that he proposed to say on West Linwal Lane if released. Dkt. No. 18 at 1. The court does not know if this means that the defendant was *not* residing with his girlfriend at the time of his arrest. Either way, the court cannot conclude that requiring the defendant to live with his girlfriend and their children would be a condition that would reasonably assure that he would not pose a danger to the community when he had that girlfriend, and at least two of those children, when he allegedly committed these offenses.

The court could require the defendant to submit to location monitoring—home detention, or GPS monitoring—if released. The defendant's past history raises questions about whether he would be likely to comply. As noted, his probation for his 2010 drug conviction/2010 theft conviction was revoked. The defendant has been involved in numerous arrests over the year or so prior to his arrest in this case. Past history does not bode well for compliance with

monitoring. Even if the defendant did comply, the fact that pretrial services can find out where the defendant is would not prevent him from obtaining a gun.

The court concludes that there is no condition or combination of conditions that will reasonably assure that the defendant would not present a danger to the community if released.

As far as the court is aware, the defendant has been in custody since January—over seven months. The court is aware that this is a long time. Judge Joseph originally scheduled the trial for August 20, 2018, dkt. no. 2; on July 27, 2018, the parties asked the court to adjourn that date, because the defendant's original counsel had withdrawn and the court had appointed successor counsel, who needed to get up to speed on the case, dkt. no. 27. At the August 1, 2018 status conference with new counsel, the parties asked the court to set another status in a month to allow defense counsel to continue to review the discovery with the defendant; the court agreed, and there is a status conference scheduled for September 6, 2018 at 11:30 a.m. Dkt. No. 29. The court will make every effort to move the case expeditiously, and trusts that the parties will keep in mind the passage of time and its impact on the detention analysis.

## III. CONCLUSION

The court **GRANTS** the defendant's motion to review detention order, and

**DENIES** the defendant's motion for release pending trial. Dkt. No. 30.

Dated in Milwaukee, Wisconsin this 27th day of August, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**